[No. D002418. Fourth Dist., Div. One. Mar. 6, 1986.]

JORGE PELAYO MACIAS, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE IMPERIAL COUNTY JUDICIAL
DISTRICT OF IMPERIAL COUNTY, Defendant and Appellant.

COUNSEL

Plourd, Blume, Scoville, Strickland & Breeze and John W. Breeze for Plaintiff and Appellant.

Tom Adler as Amicus Curiae on behalf of Plaintiff and Appellant.

Thomas M. Fries, County Counsel, and Steven M. Basha, Assistant County Counsel, for Defendant and Appellant.

OPINION

**BUTLER, J.**—Jorge Pelayo Macias appeals a judgment denying a petition for writ of mandate to compel the Imperial County Municipal Court (Mu-

nicipal Court) to furnish counseling attorneys at arraignment and upon entry of plea to indigent persons charged with crimes which could result in confinement. The Municipal Court appeals from so much of the judgment which finds the filing and hearing on the writ conferred a substantial public benefit and awards $1,000 attorney fees and $288.99 costs to Macias' counsel. Macias does not appeal denial of his petition for a writ of habeas corpus based on the same grounds as urged in his petition to compel the presence of counseling attorneys at arraignment.

## I

June 15, 1984, lawyer John W. Breeze addressed a letter to seven persons, including the four judges[1] of the Municipal Court, the county counsel, the public defender and another unidentified person. Citing our opinion in *Rhyne* v. *Municipal Court* (1980) 113 Cal.App.3d 807 [170 Cal.Rptr. 312], Breeze stated he believed the law required "misdemeanor defendants be furnished with a counseling attorney prior to and during their arraignment" if the charged offense could result in confinement; Imperial County misdemeanor defendants were not provided attorney counseling services; absence of counseling services affects validity of pleas; if such services were not provided, Breeze proposed to seek mandamus to compel the Municipal Court to provide counseling attorneys and to ask for attorney fees.

## II

Some two weeks later, June 27, 1984, Macias pleaded guilty to driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)), and admitted two prior convictions for drunk driving within the past two years. His one-year sentence to county jail was suspended and he was placed on probation for three years on condition he serve 180 days and abstain from drinking while driving.

## III

July 9, 1984, Breeze filed on Macias' behalf a petition for a writ of mandate to compel the municipal court to provide attorney counseling services to indigent defendants at arraignment alleging the court had "a clear, present and ministerial duty to safeguard the rights of those persons coming before it that are charged with misdemeanor offenses that could result in confinement." The petition alleges Breeze's June 15, 1984, letter constitut-

---

[1]Robert Fox, Orville Sullivan, Matias Contreras and Charles Jones. Tom Fries is the county counsel and Greg McDonough is the public defender. We are not informed as to the status of Mike Kelly.

ed Macias' demand for counseling services which was denied by the court with the resultant guilty plea entered without opportunity to consult with a lawyer.

### A.

We dispose of some initial considerations. Macias entered his guilty plea before Judge Robert Fox, who testified at the hearing on the petition. Macias did not demand a counseling attorney at any time. Indeed, the record does not disclose Macias knew about Breeze's letter at any time prior to filing the petition.

Judge Fox testified at length concerning his courtroom practices at arraignment in admonishing defendants of their rights. June 27, 1984, the court session was held in the Brawley City Hall. He called first the driving under the influence cases. Those responding were admonished of their right to counsel and their other constitutional rights, and were advised of the penalties. Each defendant was asked individually if the rights were understood and each answered separately. Macias' file was not included with that first group. He was called up with the general misdemeanor cases. Each person in that group, including Macias, who had been present in the council chambers throughout the first proceeding, was individually asked as to their understanding of their rights, including the right to counsel, and each separately answered.

Judge Fox read the complaint to Macias and asked if he understood the charges, a violation of Vehicle Code section 23152, subdivision (a), with two prior drunk driving convictions. The following occurred:

"[JUDGE FOX] He responded that he did.

"Q. And then what happened?

"A. I asked him how he desired to plead to these charges, guilty, not guilty, or did he want to talk to an attorney first.

"Q. What was his response to that?

"A. He indicated that he—he said that he did not want an attorney, that he wanted to plead guilty.

"Q. What did you do after he indicated he wanted to plead guilty?

"A. I also asked him if he waived an attorney.

"Q. How did he respond?

"A. He stated he did.

"Q. And then after that?

"A. I then advised him that if he entered a plea of guilty that he was giving up his right to a jury trial, the right to confront and cross-examine witnesses, the right to present witnesses on his own behalf, the right to remain silent, the right against self-incrimination, asked him if he understood that.

"Q. And what did he say?

"A. He said he did.

"Q. Then what occurred?

"A. I asked him if he—well, I told him what the penalties were from the first offense through—rather, excuse me, from a third offense and a fourth offense. I also advised him at that time that this was a third offense that he was pleading guilty to, that he had two prior convictions and that on the third offense punishments were up to $1000 fine, a year in the county jail, and that he could lose his license for three years, whatever else the court did, grant probation, did or didn't grant probation, that he would have to spend a minimum amount of time of 120 days in jail. And I further advised him of the fourth offense, the punishment would be the same as the third with the exception he would lose it for four years and that regardless of whatever else the court did on a fourth offense he would have to spend 180 days in jail minimum.

"Q. What comes after that?

"A. He—

"THE COURT: Just a second. Hold it.

"THE WITNESS: I again asked him if he understood everything I told him. He indicated he did. [Questioning continued by the district attorney]:

"Q. Then what occurred?

"A. Considering everything I told you, how do you want to plead, guilty or not guilty?

"Q. Then what happened?

"A. He said he wanted to plead guilty. I asked him if he desired to admit the prior conviction that I related.

"Q. Did he admit those prior convictions?

"A. Yes, he did."

Macias asked for immediate sentencing and was accommodated. After the sentencing, Macias filled out and signed a two-page plea of guilty and waiver of attorney form used by the Municipal Court. Judge Fox accepted and signed the form.

Macias has not appealed the denial of his habeas corpus writ. Accordingly, we do not undertake an examination of the adequacy of his advisement of rights to counsel and the effect of execution of the plea form after sentencing.[2]

## IV

We turn to the issue on this appeal—is the Municipal Court required to provide attorney counseling services to indigent defendants at the time of arraignment and before the entry of a plea on offenses the penalty for which include possible confinement. The parties agree the assistance of counsel is constitutionally required at arraignment. The Municipal Court contends that right may be waived. Macias contends an intelligent and informed waiver of the right to counsel is not attainable in the absence of an attorney counselor at the arraignment. Amicus curiae, citing *Rhyne* v. *Municipal Court, supra,* 113 Cal.App.3d 807, contend the absence of a counseling attorney is per se error.

### A.

The Municipal Court demurred to the petition alleging, among other things, Macias was not a person beneficially interested and able to maintain the action under Code of Civil Procedure section 1086 as his application for a writ of habeas corpus was then pending and appropriate relief would be available to him either by grant of that writ or an appeal from a denial.

---

[2]We are constrained to remark this latter practice is fraught with potential problems. The sentenced defendant who reads the stark language of waiver of rights to counsel and due process rights constitutionally guaranteed may well have some thoughts about his plea. Moreover, the attainment of a reasoned and deliberate waiver is enhanced when the form is read, understood and initialed prior to taking of the plea and sentencing.

The habeas corpus petition also alleged his motion to withdraw his guilty plea was denied July 5, 1984. An appeal from that denial would likewise afford him appellate consideration of the plea procedures followed by the Municipal Court in his case.

The Municipal Court has abandoned these contentions and thus concedes for appeal purposes Macias has a beneficial interest sufficient to maintain his petition. We note, however, he does not seek relief on behalf of persons similarly situated. The petition refers only to him and asks counseling services be provided for all indigent defendants facing possible confinement on charged offenses. In *Rhyne*, we used a broad brush in allowing maintenance of mandamus by persons who may not be beneficially interested in the providing of counseling attorneys: "Finally, the Municipal Court raises a mootness argument. The second prerequisite for the issuance of a writ of mandamus is a 'clear, present and beneficial right' *in the petitioner* to the performance of the duty sought to be compelled. (*Loder* v. *Municipal Court* [1976] 17 Cal.3d [859,] 863 [132 Cal.Rptr. 464, 553 P.2d 624]; Code Civ. Proc., § 1086.) Although Rhyne may not be able to show that she is still beneficially interested in the provision of counseling attorneys by the Municipal Court, this court is not precluded from determining whether counseling attorneys are required since the question is one of broad public interest. In *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716 . . . the court stated 'the issue does not become moot merely because the question is of no further immediate interest to the person who raised it' where the question will arise in the future. (At pp. 719-720.) [Citation.]" (*Rhyne* v. *Municipal Court, supra,* 113 Cal.App.3d 807 at p. 823.) We conclude the issues presented by the petition are properly before us and proceed to the merits.

B.

Amicus curiae candidly declines to address the specific factual issues presented by the petition, claiming *Rhyne* holds the absence of a counseling attorney is per se error. *Rhyne* came to us in a factual and procedural setting far different from that presented by Macias. We there pointed out the duty of the municipal court to advise misdemeanant defendants subject to confinement of their rights to counsel is rooted in constitutional origin (Cal. Const., art. I, § 15; Pen. Code, § 987, subd. (a)) and, citing *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 301 [110 Cal.Rptr. 329, 515 P.2d 273], a trial judge must advise the misdemeanant defendant of his or her right to appointed counsel. We did not conclude the absence of counseling attorneys was per se error, noting courts have discretion as to methods employed to advise defendants of their rights to counsel: "In misdemeanor arraignment proceedings the court has a modicum of discretion as to the method it uti-

lizes in advising defendants of their constitutional rights, including the right to counsel. [Citation.] The court, in such proceedings, may collectively advise those charged with misdemeanors of their rights when there is assurance the announcement was heard ánd understood. [Citation.] And, the record can be made by supplementing the collective warning by a written waiver form, read and signed by the defendant, or a stenographic transcript. [Citation.] Although less stringent procedures for advising defendants of their rights are required in misdemeanor arraignment proceedings, 'there can be no impairment of the fundamental constitutional rights of any defendant.' [Citation.] We conclude mandamus is an appropriate remedy when an inferior tribunal fails to recognize a defendant's right to counsel." (*Rhyne* v. *Municipal Court, supra,* 113 Cal.App.3d 807 at pp. 820-821.) *In re Birch* (1973) 10 Cal.3d 314, 318-319, 322 [110 Cal.Rptr. 212, 515 P.2d 12], reversed a judgment of conviction for failure of the court to advise the defendant of his right to counsel and advise him of the consequences of his guilty plea. The court did not find a constitutional or other mandate requiring the presence of a counseling attorney and placed on the trial judge the duty to secure a knowing and intelligent waiver of right to counsel and to advise of the consequences of the plea. *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288 at p. 307, reviewed cases discussing proceedings challenged for failure to provide constitutional rights and considered procedures employable by courts to assure the communication to misdemeanant defendants of their constitutional rights and a knowing and intelligent waiver of those rights. Some of the cases reviewed in *Mills* required the providing of counseling attorneys. *Mills* did not hold the presence of counsel essential to safeguarding constitutional rights.

"Thus, for example, in *In re Johnson* (1965) 62 Cal.2d 325 . . . discussed above, we indicated our approval of a procedure by which a trial judge, at the outset of the court proceedings, collectively advises all defendants in the courtroom of their constitutional rights, and then prefaces the arraignment of each defendant with an inquiry to ensure that the defendant heard and understood the general statement. [Citations.] To provide an adequate record of a defendant's voluntary and knowing waiver of his rights, such collective warnings by the trial court could be supplemented by a written waiver form which a defendant would read and sign, or alternatively, by the traditional stenographic transcript of a defendant's oral waiver of his rights. [Citation.] These suggestions, of course, are merely illustrative and do not exhaust the various acceptable means that courts may devise to promote the efficient administration of justice without impairing constitutional rights." (*Mills* v. *Municipal Court, supra,* 10 Cal.3d 288 at p. 307, fn. omitted.) We thus reject the contention the failure to provide counseling attorneys is per se error and proceed to examine the factual issues here presented.

## C.

█ Macias contends our holdings in *Rhyne* requires the Imperial County Municipal Court to provide counseling services because the admonishment procedures employed by that court likewise reflect "a clear and wilful failure to recognize, to give effect, in any real fashion, to the constitutionally guaranteed right to counsel." (*Rhyne* v. *Municipal Court, supra,* 113 Cal.App.3d 807 at p. 821.) We disagree and review *Rhyne*'s factual matrix.

Judge David Walker became Presiding Judge of the North County Judicial District July 1, 1978. He immediately terminated the services of Defenders Program of San Diego, Inc. (Defenders), which had been providing counseling services to misdemeanant defendants before and during their appearances at arraignment sessions. Defenders' attorneys advised all persons of their constitutional rights, of the elements of the charged crime and of defenses and constitutional issues. They assisted in determining those who were indigent, explained consequences of a conviction both penal and civil and advised as to entry of a guilty plea.

Following termination of Defenders' counseling services, we found a "gross, consistent pattern of denial of most fundamental constitutional rights to persons appearing before Judge Walker at the Municipal Court misdemeanor arraignment session." (*Rhyne* v. *Municipal Court, supra,* 113 Cal.App.3d 807 at p. 812.)

"The superior court found many defendants entered guilty pleas in misdemeanor arraignment court who: (1) had not been adequately advised of their constitutional rights by the court; (2) had not made an on the record waiver of their constitutional rights; (3) had not been properly advised of the consequences of their guilty pleas; (4) had been coerced into pleading guilty by threats of having bail set and being remanded to custody if they persisted in pleading not guilty; (5) had pleaded guilty although they denied guilt and there was no factual basis for their plea; (6) had been sentenced to time in custody based on uniform policies of the court as to certain offenses which failed to take into consideration each individual's particular circumstances; and (7) had entered pleas to reduced charges as a result of plea bargaining between the court and the defendant." (*Id.* at p. 814.) In *Rhyne,* the parties agreed to excuse Judge Walker from the court proceeding and the Municipal Court was retained as the party respondent. *Rhyne* thus dealt with the arraignment procedures instituted and followed by Judge Walker; *Rhyne* did not contemplate arraignment procedures employed by other judges of that court. While we ordered the Municipal Court to resume the prior counseling services offered by Defenders, the thrust of that order

was directed at the court wherein arraignments were had when Judge Walker presided. His intransigence led to the conclusion the rights of misdemeanant defendants were protectable only by the assignment to his court of counseling attorneys.

The evidence produced at Macias' hearing on his writ presents an entirely different scenario. The Imperial County Public Defender, Gregg L. McDonough, testified his office did not provide counseling services for lack of attorneys; if attorneys were available and assigned to counsel prearraignment defendants, the counseling would track the procedures established by Defenders and discussed in *Rhyne.*

Judge Charles Jones testified as to admonishment procedures in his court. Other than Judge Fox, other Municipal Court judges did not testify. Plea forms and arraignment calendars for four months were introduced into evidence. A deposition of Esther Valencia, who was a clerk for Judge Fox at Macias' arraignment, was introduced. Her testimony in some respects contradicted that of Judge Fox. Judge Jones testified to admonishment and waiver procedures followed by him in misdemeanor arraignments. His testimony does not disclose any failures to follow approved procedures in this regard.

Substantial evidence supports the court's conclusion the admonishment procedures of the Municipal Court did not disclose a gross, consistent pattern of denial of fundamental constitutional rights of persons appearing before the judges of that court at misdemeanor arraignment sessions which we condemned in *Rhyne.*

## V

After denying Macias' petition for counseling attorneys, the court suggested and counsel for the parties met with Judge Jones. As a result, arraignment procedures were apparently modified as indicated by this statement from John Breeze, Macias' counsel:

"Mr. Breeze: Your honor, again, in my conversation with Judge Jones, I was very impressed with what the court has done. The judge presented this with the arraignment procedures that have been rewritten by Judge Contreras as a result of the writ of mandate proceedings that I brought in this case, and we also went over these suggestions that were incorporated within the misdemeanor arraignment procedures. I'm satisfied that the Municipal Court will endeavor to correct whatever abuses have occurred in the past with respect to some of these points that I've phrased in my letter of August the 9th, 1984.

"THE COURT: All right.

"MR. BREEZE: So I am satisfied that it's not necessary for this court to make any further orders with respect to the mandate."

██ Breeze asked for attorney fees which were awarded by the court in the amount of $1,000 over objections of the county counsel who on behalf of the Municipal Court appeals that order, contending the award does not meet the requirements of Code of Civil Procedure section 1021.5,[3] as Macias was not a successful party, the writ having been denied, and the case did not result in the enforcement of an important right affecting the public interest.

The record does not include the letter from Judge Jones outlining arraignment admonishment procedure changes following his conference with counsel. The court concluded the changes were significant and did confer a significant benefit upon the public.

██ It is true an attorney fee award does not require a plaintiff's legal action lead to a favorable final judgment. Where relief satisfactory to the plaintiff is obtained through a change in defendant's conduct which is a result of the legal action, an award is proper. A plaintiff is considered a successful party where an important right which is the primary relief sought is vindicated through modification of behavior. The lawsuit must act as the catalyst. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 352-353 [188 Cal.Rptr. 873, 657 P.2d 365].)

██ However, the important right sought by Breeze, the right of all misdemeanants to the presence and assistance of a counseling attorney, was not achieved. The trial court denied the writ. Breeze appealed. We affirm and deny Breeze the relief he sought. While arraignment procedures may have been modified, the changes in fact did not satisfy Breeze despite his statement the court need not make further orders with respect to the petition. He pursued his appellate remedy.

These proceedings did not result in the enforcement of an "important right affecting the public interest . . ." (Code Civ. Proc., § 1021.5). The

---

[3]Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, *and* (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor." (Italics added.)

findings of the court to that effect in the award of attorney fees and costs are not supported by any evidence. Neither the statute nor the case law authorize the award of attorney fees to a party who has been adjudicated the loser. The award is vacated.

That part of the judgment denying the writ is affirmed and the award of attorney fees and costs is reversed.

Lewis, J., concurred.

**WORK, Acting P. J.**—I concur in the majority opinion except for part V; as to the denial of attorney fees, I dissent.

The trial court obtained an admission from the district attorney that the misdemeanor arraignment proceedings were discussed in a conference between the parties to the writ proceeding and the presiding judge of the Imperial County Municipal Court (Municipal Court). This conference was at the suggestion of the trial court as a direct result of this writ proceeding. The conference resulted in constructive accomplishments, i.e., correction of the major objections to the Municipal Court arraignment proceedings. The trial court conferred with the parties off the record and was apprised of the nature of the changes and, after receiving facts which, unfortunately, it did not articulate on the record, evaluated the public benefit as justifying a $1,000 attorney fee plus deposition costs. The record substantially supports the award of fees and costs.

In addition, Judge Wien's order specifically sets forth his findings which are supported by the record; that *following* the conference ordered as a result of the writ proceedings, the Municipal Court modified its advisement procedures in a *manner agreed upon by the parties*.

Where the trial court makes no findings of fact, we must infer all findings necessary to support the judgment. Therefore, the failure of the trial court to be more specific in its findings is irrelevant. (*Beach Colony II Limited* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 110 [212 Cal.Rptr. 485].) It was incumbent on the County (appealing party on the fee issue) to augment the record with the documents examined by Judge Wien, and to transcribe the essence of his "off-the-record" conference, if it wished to attack the sufficiency of his findings and order. It has the burden on this appeal and has provided no evidence to rebut the order for attorney fees which was unquestionably based in part on documents and proceedings not produced here by the county for us to review. We must presume the omitted material supports the court's order.

Further, there is no support for the view attorney fees may be denied merely because the litigation gave future Imperial County misdemeanants only half a loaf. The thrust of the writ proceedings was to provide misdemeanor arraignment procedures which would insure defendants would be advised of and provided their constitutional rights in a meaningful manner. That this was accomplished by procedures adopted by the judiciary in response to the writ proceeding, rather than by institutionalizing consulting attorneys, is irrelevant. The public benefited as a result of the time, efforts and cash outlay for expenses put forth by Macias' lawyer.

Having said the above, I point out that the rationale used to reverse the awarded fees has been rejected by our Supreme Court in *Northington v. Davis* (1979) 23 Cal.3d 955, 960 [154 Cal.Rptr. 524, 593 P.2d 221], fn. 2. There, citing prior authority, the court states that "voluntary" corrective action induced by the litigation may be compensated under the Attorney General theory. Although this comment cites cases where settlements ensued obviously resulting in less than full relief requested including a judicial resolution having precedential value, there is no meaningful difference here. (See also Comment, *The Private Attorney General in California—An Evolution of the Species* (1981) 18 San Diego L.Rev. 843, 860, 861.)

The petition of plaintiff and appellant for review by the Supreme Court was denied May 21, 1986. Bird, C. J., and Broussard, J., were of the opinion that the petition should be granted.