[No. D006445. Fourth Dist., Div. One. June 30, 1988.]

STEVEN LEISERSON, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Appellants.

728

COUNSEL

Ronald W. Hutcherson for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson and Eugene P. Gordon, Chief Deputy City Attorneys, and Leslie J. Girard, Deputy City Attorney, for Defendants and Appellants.

OPINION

**WORK, Acting P. J.**—Steven Leiserson appeals an order denying his motion for more than $40,000 in attorney's fees pursuant to Code of Civil Procedure[1] section 1021.5 which provides for the award of attorney's fees under a private attorney general theory. Leiserson contends the trial court erred in concluding he was not a successful litigant for the purposes of such an award because, although his tort action was financially unsuccessful, his lawsuit was the catalyst for the public benefit he perceives flowing from our appellate pronouncement delineating previously undefined rights of newsgatherers at disaster sites and the City's amendment of its written police policies regarding these persons at disaster sites. Defendants City of San Diego et al. (City) respond by asserting the motion was patently frivolous, untimely and was properly denied and cross-appeal claiming the trial court abused its discretion in denying their request for sanctions under section 128.5. For the reasons which follow, we conclude as a matter of law Leiserson was not a "successful" party within the meaning of section 1021.5 and, thus, is not entitled to attorney's fees. We also hold the issues he raises and his appeal are not frivolous. Accordingly, we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

The factual background underlying this litigation is recounted in detail in *Leiserson* v. *City of San Diego* (1986) 184 Cal.App.3d 41, 44-46 [229 Cal.Rptr. 22]. We summarize. Leiserson, a news cameraman for a local

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

television station, was arrested by a San Diego police officer while photographing the site of the Pacific Southwest Airlines (PSA) jetliner crash in a residential section of central San Diego where approximately 150 persons were killed on September 25, 1978. The arrest followed his refusal to remain away from the crash site where rescue and fire personnel were engaged. After the misdemeanor criminal complaint filed against him was dismissed, he sued the City and others for damages for their false imprisonment, assault, battery, torture, intentionally inflicting mental distress, conspiring to violate his civil rights, violating his civil rights, interfering with his contract relations, invading his privacy and malicious prosecution. He asserted his arrest was unreasonable because Penal Code section 409.5, subdivision (d) gave him the right to remain at the disaster site as a media representative. The trial court found for defendants, reasoning the police acted properly in ordering Leiserson away from the crash site and arresting him for failing to comply with that order. The court concluded the officers reasonably believed the crash site might constitute a crime scene from which members of the press may be excluded. Moreover, the trial judge held the right of press access guaranteed by Penal Code section 409.5, subdivision (d) did not extend to situations where the police reasonably believed members of the press would be endangered by entering the disaster area. In any event, the trial judge noted the police complied with the statute by providing a cordoned-off press area within 60 feet of the crash site.

On appeal, we affirmed the trial court's decision, holding substantial evidence supported the trial court's finding the police reasonably believed the disaster site was also the scene of a possible crime and, thus, Penal Code section 409.5, subdivision (d) did not guarantee Leiserson access beyond that designated by the police. (*Leiserson* v. *City of San Diego, supra,* 184 Cal.App.3d at pp. 44, 52-53.) However, our determination required us to analyze Penal Code section 409.5 within the context of the trial court's remaining findings to determine the extent of media access guaranteed. We weighed Leiserson's claim the statute gave the press unrestricted access to disaster sites for the purpose of news gathering so long as they do not interfere with emergency crews performing their duties and the uncontradicted evidence there was no interference by Leiserson. (*Id.* at p. 49.) We concluded two of the trial court's three independent justifications for the police conduct were insufficient. More specifically, we held safety is not a ground to exclude press members from a disaster site because the statute provides a specific exception for members of the media in situations already determined to be unsafe. (*Id.* at p. 50.) Similarly, we held that providing a separate confined area for the press at disaster sites does not comport with the mandate of the statute, because press access must be unrestricted unless police personnel at the scene reasonably determine such unrestricted access will interfere with emergency operations. (*Id.* at p. 51.) However, the trial

court's determination the police reasonably believed the crash may have been the result of an assassination attempt on the life of a public official erroneously believed to have been aboard the plane was supported by the record. Thus, we concluded the traditional right to exclude the press from crime scenes justified the police order leading to Leiserson's arrest. (*Id.* at pp. 52-53.)

After our opinion became final, Leiserson moved for attorney's fees of $40,953.50 pursuant to section 1021.5, contending his action had resulted in enforcing an important right affecting the public interest and conferring significant benefits on both the general public and the California news media. He further alleged the necessity and financial burden of private enforcement made the award appropriate since he lost his damages claim.

Leiserson theorizes he is entitled to fees because his damages action served to vindicate the media's right to gather and disseminate information from and about disaster sites on behalf of the public at large and acted as a catalyst for policy reforms by the San Diego Police Department and a published appellate court decision delineating previously undefined rights of the news media.[2]

[2]Leiserson relies on police department instruction number 1.15, dated August 11, 1981, and entitled *Press Release and Media Relations Guidelines,* which superseded department instruction 1.15 dated September 29, 1977. The stated purpose of the guideline was to insure the constitutional rights of a free press and the right of an accused to a fair trial while establishing a consistent means of communicating public information through the news media. At page five of the six-page document, section VIII, entitled *News Media at Disaster Areas and Crime Scenes,* provides in pertinent part: "The ranking department member present at a disaster or crime scene is responsible for providing appropriate information to the news media. The Public Information Officer, upon his arrival, will assist the ranking department member in providing information to the media. The ranking department member will designate a person to carry out this function pending arrival of the Public Information Officer.

"A. *Disaster and accident scenes may be closed to the public pursuant to 409.5 P.C., however, news media representatives are exempt* from this restriction. As soon as a disaster or accident has been identified and secured, authorized media shall be permitted free access to the area after being advised of any existing danger. Department members shall not decline to rescue news media personnel in danger, but they will not provide an escort into or out of dangerous areas. In general, authorized members of the news media are to be permitted free movement in the area as long as they do not interfere with law enforcement or public safety functions. Generally, the Public Information Officers will maintain liaison with the new[s] media.

"B. *Crime scenes may be closed to all unauthorized persons includin[g] the news media.* Crime scenes in areas of public access may be opened for media inspection after any search, preservation and processing of evidence has been completed and the scene is secured. Reporters and/or photographers shall be kept far enough from a crime scene being searched or preserved to protect it from being disturbed, or evidence from being damaged. News media representatives have *no right* of access to private property greater than the general public and are subject to public access restrictions of the owner or person in charge when a crime scene is located on private property."

Former department instruction 1.15, dated September 29, 1977, made no reference to Penal Code section 409.5 or its provisions for allowing media access at the disaster sites.

In support of the motion, Leiserson and his counsel filed declarations. Leiserson's declaration summarized his inability to gain assistance from large and small news organizations, his employer, KFMB-TV, The Press Club, Sigma Delta Chi, Society of Professional Journalists, the American Civil Liberties Union, the Law Firm of Gray, Cary, Ames & Frye which had handled his criminal defense, and several other attorneys in pursuing his civil action.[3] Leiserson summarizes his position as follows: "It was my desire through such an action to rehabilitate myself in the eyes of my employer and to elevate my own self esteem. Critical, however, to the entire effort was my interest in seeing enforced that which I had taken for granted throughout my career, namely, the right to photograph events at the scene of disasters."

His counsel's declaration affirms Leiserson's difficulty in obtaining civil representation. The attorney explained the litigation's procedural history; noted mandatory judicial arbitration was ordered in which the arbitrator awarded Leiserson $7,500, but the defendants elected a trial de novo; perceived Leiserson was a crusader in bringing forth a case of first impression regarding the judicial construction of Penal Code section 409.5 terminating in an appellate court decision delineating "significant and previously undefined rights of news gatherers at accident and disaster sites and restraints on law enforcement officials relating to those news gatherers"; suggested Leiserson apparently had a role in the revision of the policies and training of the San Diego Police Department; stated that, although this case was originally filed as a damage claim, there was little likelihood from the inception of the action that damages sufficient to defray actual costs of litigation could be recovered, as Leiserson's proof of special damages from medical treatment were less than $20 and other special damages were minimal; and emphasized postfiling discovery revealed exemplary damages were not recoverable against the City. Accordingly, Leiserson now claims he pursued the litigation simply to vindicate his rights and seek a judicial interpretation of Penal Code section 409.5, subdivision (d).

The City contended Leiserson was not a "successful" litigant within the meaning of section 1021.5 and, moreover, had enforced no "important right affecting the public interests." The City also asserted the motion was untimely and patently frivolous, warranting the award of sanctions pursuant to section 128.5. In denying Leiserson's motion, the trial court expressed its concern whether Leiserson was a "prevailing" party as defined by this court's truncated statement in *Macias* v. *Municipal Court* (1986) 178 Cal.App.3d 568, 580 [223 Cal.Rptr. 756], that "[n]either the statute nor the

---

[3] We take judicial notice that the professional associations and the law firm Leiserson states declined to participate on his behalf have often vigorously involved themselves in local cases involving suspected intrusions on the media's First Amendment privileges.

case law authorize the award of attorney fees to a party who has been adjudicated the loser." Rising to the City's argument Leiserson only sought damages and obtained none and that the language in *Macias* on which Leiserson relied is largely dicta, the court stated: "That's my concern. My concern and the reason that I am going to leave the tentative as the order of the court is because I interpret the language—.

"I don't know that this is a frivolous motion. It's an interesting theory that is being argued here by plaintiffs and I can't find anything directly on point, but I have problems with putting the law together such that if the court of appeal were to ever step outside the bounds of what it must do and thereby provide guidelines, for example, then it would be creating a prevailing party where really none existed and the actual loser of the appeal was indeed the plaintiff and that is the language that I am seizing on, that which is in *Macias*.

"I think if the law is going to be made any broader than that, especially in a case like that, it ought to be done by the court of appeal." Finally, in response to Leiserson's counsel's assertion the court should pragmatically assess his action relative to its impact on the revision of the police department's policy manual and the language of the appellate decision, the trial court stated: "I think that was probably all very very beneficial not only to the parties, but to our policy-makers for the City and maybe even state-wide, but I am very fearful I might be making a ruling that really goes beyond what the existing laws intend. If it's going to be done, I want it to be done by an appellate [court]."

### LEISERSON IS NOT A "SUCCESSFUL" PARTY WITHIN THE MEANING OF SECTION 1021.5

Leiserson contends the sole issue presented is whether litigants in a tort damages action can be deemed "successful" for an award of attorney's fees under section 1021.5 if by this action, including appeal, they spur enforcement of an important public right and an enunciation of the governing rule of law precisely delineating its breadth, even though they obtain no money damages or other requested relief. As we shall explain, such a litigant can be deemed "successful" for an award of attorney's fees under section 1021.5, although our language in *Macias* v. *Municipal Court, supra,* 178 Cal.App.3d at page 580, may have misled the trial court to the contrary. However, as a matter of law, Leiserson was not a "successful" litigant within the meaning of section 1021.5 under the circumstances of this case.

Serving as one of several exceptions to the general rule each party is responsible for his own attorney's fees (*Gray* v. *Don Miller & Associates,*

*Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; *Bouvia* v. *County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1082 [241 Cal.Rptr. 239]), the private attorney general doctrine was judicially developed through the courts' inherent equitable powers and later codified in section 1021.5 (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200]; *Bouvia* v. *County of Los Angeles, supra,* 195 Cal.App.3d at p. 1082). Section 1021.5 authorizes the court to: "[a]ward attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." This statute is designed "to encourage the presentation of meritorious claims affecting large numbers of people by providing successful litigants attorneys fees incurred in public interest lawsuits." (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 111 [212 Cal.Rptr. 485]; *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 44-48 [141 Cal.Rptr. 315, 569 P.2d 1303].) The doctrine " 'rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' " (*Maria P.* v. *Riles* (1987) 43 Cal.3d 1281, 1289 [240 Cal.Rptr. 872, 743 P.2d 932], quoting *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 933.)

■ Section 1021.5 expressly requires an applicant to be a "successful party" in an action resulting in the enforcement of an important right affecting the public interest. In determining whether the party is "successful," our Supreme Court has uniformly explained: "[A]n attorney fee award may be justified even when plaintiff's legal action does not result in a favorable final judgment. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 352 [188 Cal.Rptr. 873, 657 P.2d 365]; see also *Press* v. *Lucky Stores, Inc.,* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704] [although their action had become moot, plaintiffs were awarded fees under § 1021.5 because they had achieved the relief they sought through preliminary injunction].) It is also clear that the procedural device by which a plaintiff seeks to enforce an important right is not determinative of his or her entitlement to attorney fees under section 1021.5. (*In re Head* (1986) 42 Cal.3d 223, 228-229 [228 Cal.Rptr. 184, 721 P.2d 65].) Similarly, a section 1021.5 award is not necessarily barred merely because the plaintiff won the case on a preliminary issue. (*Woodland Hills*

*Resident[s] Assn., Inc., supra,* 23 Cal.3d at p. 938.) In determining whether a plaintiff is a successful party for purposes of section 1021.5, '[t]he critical fact is the impact of the action, not the manner of its resolution.'" (*Maria P. v. Riles, supra,* 43 Cal.3d at pp. 1290-1291, quoting *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [186 Cal.Rptr. 589, 652 P.2d 437].) Consequently, in determining whether a party is successful the trial court "'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award' under section 1021.5." (*Maria P.* v. *Riles, supra,* 43 Cal.3d at p. 1291, quoting *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 938.) The trial court must find a "causal connection between the plaintiffs' lawsuit and the relief obtained in order to justify a fee award under section 1021.5 to a successful party." (*Maria P.* v. *Riles, supra,* 43 Cal.3d at p. 1291; *Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348 [188 Cal.Rptr. 873, 657 P.2d 365].)

"'"The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two."' [Citation.] An award of attorney fees under section 1021.5 is appropriate when a plaintiff's lawsuit '"was a *catalyst* motivating defendants to provide the primary relief sought,"' or when plaintiff vindicates an important right '"by activating defendants to modify their behavior."' [Citations.] In a similar situation involving 42 United States Code section 1988, the United States Supreme Court expressed the appropriate standard as follows: '"plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."' (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 433 [76 L.Ed.2d 40, 50, 103 S.Ct. 1933], citation omitted.)" (*Maria P.* v. *Riles, supra,* 43 Cal.3d at pp. 1291-1292; italics in original.)

In determining whether a party is "successful" within the meaning of section 1021.5, the court must critically analyze the surrounding circumstances of the litigation and pragmatically assess the gains achieved by a particular action. (*Bouvia* v. *County of Los Angeles, supra,* 195 Cal.App.3d at p. 1083; see *Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at p. 685.) This inquiry requires more than a mechanical, superficial glance at the "mere appearance" of the matter and whether a party has been successful may be predicated on matters outside the merits of the underlying dispute. (*Id.* at p. 685.) In sum, the governing factual barometer "is the impact of the action, not the manner of its resolution." (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at p. 685.) "How the party achieves the goal of enforcing the right in question is not determinative of

the right to an award of attorney fees under section 1021.5. The impact of the litigation is." (*In re Head* (1986) 42 Cal.3d 223, 228-229 [228 Cal.Rptr. 184, 721 P2d 65].)

The trial court's reliance on the language in *Macias* v. *Municipal Court, supra,* 178 Cal.App.3d at page 580, "[n]either the statute nor the case law authorize the award of attorney fees to a party who has been adjudicated the loser," was misplaced. The majority in *Macias* concluded the petitioner was not successful within the meaning of section 1021.5, because the appellate record did not show conclusively that the relief sought had been achieved. Petitioner had petitioned to have the municipal court furnish all indigent misdemeanants with counseling attorneys at arraignment and at entry of plea where charged with crimes which could result in confinement. The majority found the record was silent as to what, if any, municipal court procedures were modified. Although the superior court had denied Macias's petition for a writ of mandate, it was not that fact alone the majority found dispositive. (*Id.* at p. 579.) Thus, *Macias* does not stand for the proposition that where one fails to obtain a favorable final "judgment" that party is automatically precluded from being awarded attorney's fees under section 1021.5 under all circumstances. Rather, the facts of each case must be judiciously analyzed before determining eligibility for section 1021.5 attorney fees.

Here, although the trial court did not perform the inquiry summarized above, a review of the record establishes as a matter of law Leiserson is not a "successful" party within the meaning of section 1021.5. Leiserson asserts he is for two reasons: Because we would infer this litigation resulted in the cited revision of the San Diego Police Department's policy manual and because our published opinion delineated important media rights protected by Penal Code section 409.5. As to the former, Leiserson candidly concedes he has not shown a causal nexus between his lawsuit and the voluntary action undertaken by the San Diego Police Department in revising its manual two years after he filed his lawsuit. (See, e.g., *Westside Community for Independent Living, Inc.* v. *Obledo, supra,* 33 Cal.3d at p. 353; see also *Johnston* v. *Department of Personnel Administration* (1987) 191 Cal.App.3d 1218, 1227 [236 Cal.Rptr. 853].) He acknowledges one can only infer the additions were made as a result of his action. Leiserson had the opportunity to discover and present evidence of the City's motivation, but has tendered none. Indeed, it is just as plausible any number of influential sources following the PSA jetliner crash could have induced this revision. (See *Westside Community for Independent Living, Inc.* v. *Obledo, supra,* 33 Cal.3d at p. 354, fn. 6.) Absent evidence to support a causal relationship between Leiserson's tort action and the manual revision, we analyze Leiserson's "success" in light of our appellate opinion.

■ "The decision as to whether an award of attorney fees is warranted rests initially with the trial court." (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874].) However, within this narrow context of determining whether Leiserson is a "successful" party within the meaning of section 1021.5, this court is in at least as good a position as the trial court to decide whether the legal rights amplified through our opinion vindicates an important public interest and confers a significant benefit on the general public or broad class of citizens, rendering him a successful party. (*Bouvia* v. *County of Los Angeles, supra,* 195 Cal.App.3d at p. 1083, fn. 7; *Los Angeles Police Protective League* v. *City of Los Angeles* (1986) 188 Cal.App.3d 1, 8 [232 Cal.Rptr. 697]; *Wilkerson* v. *City of Placentia* (1981) 118 Cal.App.3d 435, 445 [173 Cal.Rptr. 294].)

■ Whether a published opinion clarifies and/or expands the law is probative of whether Leiserson has satisfied the substantial benefit concept underlying the private attorney general rule. (*Wilkerson* v. *City of Placentia, supra,* 118 Cal.App.3d at p. 445.) Similarly, if that opinion is published because it satisfies the criteria for publication under rule 976 et seq. of the California Rules of Court, such status is also probative of whether the decision clearly vindicates a right where the reason for publication was to announce a rule not found in previously published opinions. (*Los Angeles Police Protective League* v. *City of Los Angeles, supra,* 188 Cal.App.3d at p. 12.)

■ Certainly, our previous opinion recognized the media's right of access to disaster sites as expressly provided for in Penal Code section 409.5. We upheld access rights of the press representation against the City's argument that safety hazards alone justified their exclusion, and declared the establishment of a separate press area does not always substantially comply with the statutory mandate. However, we rejected Leiserson's contention that exclusion can be ordered only where actual interference with emergency crews occur. We stated, "press representatives must be given unrestricted access to disaster sites unless police personnel at the scene reasonably determine that such unrestricted access *will interfere* with emergency operations." (*Leiserson* v. *City of San Diego, supra,* 184 Cal.App.3d at p. 51, original italics.) Finally, we held Penal Code section 409.5 inferentially precludes press access to disaster sites constituting possible crime scenes—an argument which Leiserson did not contest. Consequently, although we defined media access rights at disaster sites within the context of Penal Code section 409.5, we simply reinforced the express statutory mandate. Significantly, we ruled Leiserson's primary assertion that the media can be excluded only where actual interference occurs was in error. Further, we held substantial evidence supported the trial court determination he was properly excluded from the disaster site, because the police reasonably believed it was a crime scene.

Granted, litigation which results in a published opinion echoing and perhaps defining "existing rights does not mean that a substantial benefit to the public cannot result"; for, such pronouncements guarantee vital constitutional and statutory principles are not simply relegated to "mere theoretical pronouncements of little practical value to ordinary citizens who cannot afford the price of vindicating those rights." (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318, 319 [193 Cal.Rptr. 900, 667 P.2d 704].) However, our opinion as characterized above does not warrant attorney's fees under section 1021.5, considering the precise nature of the tort litigation Leiserson elected to pursue and his failure to prevail in any manner within his chosen context. ■ Although the procedural device by which a plaintiff seeks to enforce an important right does not always determine entitlement to attorney's fees under section 1021.5 (*Maria P.* v. *Riles, supra,* 43 Cal.3d at p. 1291; *In re Head, supra,* 42 Cal.3d at p. 228), the relief sought is probative of such entitlement. Indeed, where only a litigant's personal economic interests are advanced by a lawsuit, fees may not be awarded since the litigation does not significantly benefit a large class of persons. (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 167 [188 Cal.Rptr. 104, 655 P.2d 306]; *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at pp. 319-320, fn. 7.) ■ Here, Leiserson confined his tort action prayer to civil damages for himself, never requesting a declaration of the access rights of the press at disaster sites as conferred by Penal Code section 409.5, subdivision (d). By tactical design, the litigation was not intended to promote the rights of the media by obtaining a judicial declaration of those rights. Rather, a review of Leiserson's damages complaint reveals his primary intent for pursuing the litigation was to advance his own personal economic interest. In spite of Leiserson's posttrial declarations, the record conclusively shows he vigorously asserted entitlement to substantial compensatory damages for physical and emotional trauma from both the City and individual defendants at trial. Further, his trial brief filed the day trial began strongly argues for substantial punitive damages against the individuals.[4] Finally, in light of the narrow focus of Leiserson's tort pleadings, it is clear our published opinion was simply fortuitous. It would be patently absurd for entitlement to attorney's fees under section 1021.5 to be predicated upon our fortuitous decision to use Leiserson's appeal as a tool to communicate with the bench and bar certain legal guidelines and order its publication where the plaintiff himself does not request such a declaration.[5]

---

[4] Moreover, although the trial court did not address this issue, we question whether the record does not conclusively show Leiserson is not entitled to attorney's fees because the financial burden of his lawsuit is not out of proportion to his individual stake in pursuing the damages action. (See discussion in *Beach Colony II* v. *California Coastal Com., supra,* 166 Cal.App.3d at pp. 113, 115.)

[5] In light of Leiserson's declaration summarizing his inability to gain assistance from a series of large and small news organizations, fraternities, and others, we query whether their

## SANCTIONS ARE NOT WARRANTED

Relying on section 907, the California Rules of Court, rule 26(a) and *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179], the City contends not only we should impose sanctions for a frivolous appeal, but also by cross-appeal the trial court abused its discretion in denying its motion for sanctions for the filing and pursuing of a frivolous action. Although we find Leiserson's contentions do not entitle him to relief,[6] his appeal presents a unique issue which is not "indisputably" without merit. As to the denial of sanctions under section 128.5, this decision is entirely within the discretion of the trial court and will not be reversed absent clear abuse. (*Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668 [213 Cal.Rptr. 654].) We find none here, where there is no showing Leiserson's sole purpose was to harass the City and no evidence suggesting any other improper motive.

The order is affirmed.

Todd, J., and Staniforth, J.,* concurred.

---

inaction may be probative of the media's belief its significant First Amendment access rights were not in jeopardy.

[6] An appellate court's determination an action or contention is "without merit" does not automatically relegate it to the category of frivolous. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist.* (1983) 140 Cal.App.3d 111, 116 [189 Cal.Rptr. 208]; *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 929 [219 Cal.Rptr. 562].) However, where an action is pursued for an improper motive, or the party knows or should have known the facts or law or both preclude any recovery, yet nevertheless prosecutes the matter, the question of a frivolous action is raised. (*Lesser* v. *Huntington Harbor Corp., supra,* 173 Cal.App.3d at p. 929; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port District, supra,* 140 Cal.App.3d at p. 116.) "Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.)

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.