Filed 5/17/16  Russo v. Bank of America CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GENEROSO RUSSO, | D067623 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00095724-CU-OR-CTL) |
| BANK OF AMERICA, N.A., | |
| Defendant and Appellant. | |

APPEALS from a judgment and postjudgment order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

John L. Staley for Plaintiff and Appellant.

Severson & Werson and Kerry W. Franich, Jan T. Chilton, Matthew A. Garfinkle for Defendant and Appellant.

Plaintiff and appellant Generoso Russo sued defendant and appellant Bank of America, N.A. (Bank) for Bank's actions in, among other things, unilaterally imposing an impound account on his loan, claiming Russo was in default, failing to credit his payments, and initiating foreclosure proceedings against him.  The jury entered special

verdicts in Russo's favor on his claims for breach of contract and negligence, awarding him $523.14 in contract damages, and the trial court found in Russo's favor on his claim for unfair business practices in violation of the Unfair Competition Law (UCL; Bus. & Prof. § 17200, et seq.). The jury entered verdicts in Bank's favor on Russo's claims for fraud, misrepresentation and elder abuse. Before trial, the court denied as procedurally infirm and untimely Russo's motion for leave to amend to add a cause of action for intentional infliction of emotional distress, without prejudice to a later motion for leave to amend according to proof. After the jury returned its special verdict, the court denied Russo's motion for an award of attorney fees and costs brought under Civil Code section 1717 and Code of Civil Procedure section 1021.5, and also denied Bank's motion for attorney and expert witness fees brought in part under Code of Civil Procedure section 998.

Russo appeals from the judgment, and both he and Bank appeal from the postjudgment order denying attorney fees and costs. Russo contends he was the prevailing party on the contract and his UCL claim, entitling him to attorney fees under Civil Code section 1717 and Code of Civil Procedure section 1021.5. He also contends the trial court erred under Code of Civil Procedure sections 473 and 576 by denying his motion for leave to amend to add a cause of action for intentional infliction of emotional distress. Bank contends the court abused its discretion by denying it an award of attorney fees and costs. We reject the parties' contentions and affirm the judgment.

2

FACTUAL AND PROCEDURAL BACKGROUND

Since 1978, Russo has owned a single family residence in Poway, California. During this time, Russo declined an impound account for his property taxes and insurance, directly paying those expenses himself. In 2003, Russo refinanced his loan with Bank, and executed an impound account waiver. Russo was never late with his mortgage payments.

In 2009, Russo, who was then retired, received a solicitation from Bank for a loan modification, and he inquired into the possibility of decreasing his mortgage payment. Russo's conversation with the Bank representative did not include any discussion of an impound account. In December 2009, Russo made a timely payment on his property taxes. Thereafter, an individual with Bank checked the status of Russo's December 2009 property tax payment, and, believing Russo was delinquent, notified him on December 11, 2009 (one day after the December 10, 2009 deadline), that he was delinquent and placed an impound account on his loan. Though Bank eventually received a refund for the property taxes it had paid on Russo's behalf because Russo had in fact paid them, Bank did not cancel the impound account because Russo was under a home loan modification review under the Making Homes Affordable (MHA) program, and the impound account remained even without any delinquency on Russo's part.

Russo ignored Bank's requirement that he pay impound fees, and he chose not to pay the increased amount of his loan. Though Russo continued to make timely mortgage payments in the original amount, Bank started rejecting or not applying them because his payments did not include the impound. In March 2010, Bank determined that Russo was

3

not eligible for an MHA loan modification. Though Russo's loan did not qualify under MHA guidelines, Bank's loan modification review continued.

In July 2011, Bank recorded a notice of default on Russo's property, commencing foreclosure proceedings. It eventually reported Russo's defaults to credit agencies. Thereafter, Bank rejected Russo's timely mortgage payments, and in October 2011, it recorded a notice of trustee's sale. Days before the foreclosure sale, Russo paid to reinstate his loan.

Russo sued Bank, alleging causes of action for financial elder abuse, negligence, breach of contract, violation of the UCL, fraud and declaratory relief. During the proceedings, Bank served on Russo two settlement offers under Code of Civil Procedure section 998 (998 offers).[1] In June 2013, Bank offered to resolve all of Russo's claims and sought-after relief for $100,001.00. In April 2014, Bank offered to compromise Russo's claims for $250,000 and up to $115,000 in attorney fees and costs. Russo rejected both offers. In May 2014, Russo advanced a settlement offer for $450,000.

The matter proceeded to a jury trial. Before trial, the court granted Bank's motion in limine to bar Russo from presenting evidence that he had suffered a stroke as a result

---

[1] Code of Civil Procedure section 998, subdivision (c)(1) provides: "If an offer [of compromise] made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

4

of his dispute with Bank, on grounds Russo did not present evidence of causation to a reasonable medical certainty or probability. Russo's counsel unsuccessfully argued that he would say his client did not have high blood pressure or stress in his life until he had the dispute with Bank.

During trial, Russo presented an expert who opined that had Bank not reported Russo's defaults, Russo would have qualified for new loans and refinanced in 2010 and 2012, saving him approximately $104,500.00 over 21 years. Russo's counsel argued to the jury that if Bank had not breached its contract with Russo and damaged his credit, Russo would have realized those savings with a better loan, which, reduced to its present value, was approximately $75,000 in out-of-pocket damages as well as about $500 in foreclosure fees Russo paid. The court instructed the jury that Russo claimed contract damages for "out of pocket costs, such as foreclosure fees and expenses and overpayments as a result of the escrow account" and also "has suffered damages because he has not been able to refinance his loan." Russo also argued that the jury should award him $720,000 (amounting to double the value of his home) as emotional distress damages, and an additional sum for punitive damages.

Shortly before the jury returned its verdicts, Russo offered to settle with Bank for $2.5 million. The jury returned special verdicts on Russo's contract, negligence, fraud and financial elder abuse claims. It found Bank breached a contract, and that Russo's total economic loss was $523.14. It found Bank was negligent and caused Russo harm, but that Russo suffered no damages. The jury assigned equal responsibility to both Bank

5

and Russo for Russo's harm. The jury found in Bank's favor on Russo's claims for fraud and financial elder abuse.

Russo moved for entry of judgment on his UCL claim. Following a hearing on the matter, the court found Bank had violated the UCL, but that any award to Russo was "subsumed by the jury's award of damages." It found Russo was the prevailing party on that claim. It entered a nonsuit on Russo's claim for declaratory relief. The court eventually entered judgment in Russo's favor on his contract, negligence and UCL claims, and in Bank's favor on Russo's claims for fraud, financial elder abuse, and declaratory relief.

Russo moved for an award of $175,635 in attorney fees and $11,822.07 in costs under Civil Code section 1717 as the prevailing party on his contract and negligence claims, and also as a private attorney general under Code of Civil Procedure section 1021.5. Russo additionally argued that Bank's 998 offers did not bar him from recovering post-offer attorney fees and costs because Civil Code section 1717 prevailed over Code of Civil Procedure sections 998 and 1032, but if that were not the case, he was entitled to his pre-998 offer fees and costs of $42.672.03.

Bank also moved for its fees and costs. It argued that given Russo's nominal recovery and failure to achieve his litigation objective, Bank was necessarily the prevailing party on Russo's claims, all of which involved the note and deed of trust at issue in Russo's contract claim. Bank further argued that it was the prevailing party and entitled to its post-998 offer costs, including attorney fees and expert witness fees by operation of Code of Civil Procedure section 998.

6

The trial court denied both parties' motions. It ruled Russo was the prevailing party under Code of Civil Procedure section 1032.[2] It further observed that Civil Code section 1717 entitles a party to attorney fees when that party obtains a simple, unqualified victory by completely prevailing on all of its contract claims and that a plaintiff will not automatically prevail for purposes of that statute when he does not achieve all of his litigation objectives. The court ruled Russo did not bring a simple breach of contract claim, but asked for $795,000 plus punitive damages, was awarded only $523.14 and no damages on his negligence claim, and did not prevail on his claims for financial elder abuse and fraud. It found as to the litigation as a whole, Russo did not achieve his litigation objectives and that as a result, there was no party prevailing on the contract for purposes of Civil Code section 1717.

As for Bank's motion, the trial court observed that a 998 offer to compromise "must be extended in 'good faith,' meaning that the offer 'must be realistically reasonable under the circumstances of the particular case' [citation], and 'carry some reasonable prospect of acceptance[.]' " The court ruled Bank's 998 offers did not mention the escrow account or Russo's credit history—issues that were important to Russo, which Bank had

---

[2]    Code of Civil Procedure section 1032 entitles a "prevailing party" to recover costs in any action or proceeding "as a matter of right." (Code Civ. Proc., § 1032, subd. (b); *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1333.) A prevailing party for purpose of Code of Civil Procedure section 1032 includes the party with the net monetary recovery. (Code Civ. Proc., § 1032, subd. (a)(4); *Goodman*, at p. 1333.) " '[C]ourts have consistently held the prevailing party for the award of costs under [Code of Civil Procedure] section 1032 is not necessarily the prevailing party for the award of attorney's fees in contract actions under [Civil Code] section 1717.' " (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438 & fn. 1, citing in part *Goodman*, at p. 1335, fn. 3 [noting differences in definition of "prevailing party" in the two statutes].)

7

addressed in earlier, informal, settlement offers—and that "[w]ithout these additional terms, there was no reasonable prospect of acceptance."

Russo appeals from the judgment and postjudgment order denying his motion for attorney fees and costs. Bank appeals the postjudgment order denying its motion for attorney and expert witness fees.

DISCUSSION

## I. *Russo's Appeal*

### A. *Prevailing Party under Civil Code Section 1717*

Relying on *Hsu v. Abbara* (1995) 9 Cal.4th 863, Russo contends that because he obtained an award of $523.14 on his contract claim, he was the prevailing party as a matter of law under Civil Code section 1717, entitling him to reasonable attorney fees under that statute. He argues the court erred in denying his motion when it (1) concluded he was not the unqualified winner of his contract claim; and (2) considered resolution of his tort claims when it determined whether he was the prevailing party.

Citing cases such as *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103 (*Scott*) and *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, Bank responds that because Russo obtained less than one percent of his sought-after damages, the trial court correctly determined that Russo did not achieve a complete or unmixed victory on his contract claim. It argues that *Scott* plainly rejects Russo's argument that any recovery of damages on a contract claim automatically makes the plaintiff the prevailing party under Civil Code section 1717's mandatory provision. Bank further argues that because all of Russo's causes of action involved or related to the contract, they were all "on the

8

contract" and thus the court did not abuse its discretion in denying Russo prevailing party status based on his lack of success on all of his claims, and also his small actual recovery compared to his sought-after damages.

### 1. *Standard of Review*

"The trial court exercises wide discretion in determining who, if anyone, is the prevailing party for purposes of attorney fees." (*Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 366; see *Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 871.) Accordingly, we review the trial court's ruling for a manifest abuse of discretion, which occurs when the trial court acts in an " 'arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice' " (*Cussler*, at p. 366), commits a prejudicial error of law, or makes necessary findings not supported by substantial evidence. (*Silver Creek, LLC v. Blackrock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1539.)

### 2. *Legal Principles*

Civil Code section 1717 provides in part: "In any action on a contract, where the contract specifically provides that the attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] . . . The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as

9

provided in paragraph (2) [relating to dismissal of an action], the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section." (Civ. Code, § 1717, subds. (a), (b)(1).)

Thus, "a plaintiff who obtains *all relief requested* on the only contract claim in the action *must* be regarded as the party prevailing on the contract for purposes of attorney fees under [Civil Code] section 1717." (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 876, italics added.) Conversely, the trial court has discretion to determine no party prevailed when " 'both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only part of the relief sought.' " (*Id*. at p. 875.) In *Scott*, *supra*, 20 Cal.4th 1103, the California Supreme Court explained, citing *Hsu v. Abbara*, that "[w]hen a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, [Civil Code ] section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims. [Citation.] If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees. '[I]n deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements and similar sources.' " (*Scott*, at p. 1109, citing *Hsu v. Abbara*, at p. 877.) In *Hsu v. Abbara*, the

10

court stated:  "The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' "  (*Hsu v. Abbara*, 9 Cal.4th at p. 876.)  And "in determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' "  (*Id.* at p. 877, italics omitted.)

In *Hsu v. Abbara*, the plaintiffs sued the defendants alleging they had formed a contract for the sale of a single family home, and sought specific performance of that contract, which contained an attorney fee clause.  (*Hsu v. Abbara*, *supra*, 9 Cal.4th at pp. 866, 867.)  Following a bench trial, the trial court granted the defendants' motion for judgment finding no contract was ever formed, but it denied the defendants' ensuing motion for attorney fees and costs under Civil Code section 1717.  (*Id*. at pp. 866, 868.) The California Supreme Court acknowledged that a court has discretion to declare there is no prevailing party when the results of the litigation over the contract claims are mixed as in *Nasser v. Superior Court* (1984) 156 Cal.App.3d 52, in which a plaintiff lessee obtained declaratory relief to validate an option to renew a lease, but the trial court fixed rent at an amount substantially higher than the lessee's demand, and thus properly determined there was no prevailing party.  (*Hsu v. Abbara*, 9 Cal.4th at p. 875; see also *de la Cuesta v. Benham*, *supra*, 193 Cal.App.4th at p. 1297 [discussing *Nasser*].)  In the circumstances at issue in *Hsu*, however, the California Supreme Court held the trial court had no discretion to deny the defendants an award of attorney fees because the judgment was a " 'simple, unqualified win' " for the defendants on the only contract claim between

11

them and the plaintiffs. (*Hsu v. Abbara*, at p. 876.) Any implied finding otherwise was not supported by substantial evidence. (*Ibid.*)

In *Scott*, the plaintiff sought to prove more than $2 million in contract damages but succeeded in establishing only about $440,000. (*Scott*, *supra*, 20 Cal.4th at p. 1109.) According to the high court, in that scenario the plaintiff "did not achieve all of its litigation objectives, and thus [was] not automatically a party prevailing on the contract for purposes of [Civil Code] section 1717 . . . ." (*Ibid.*) However, *Scott* held the trial court did not abuse its discretion in concluding (implicitly) that, on balance, the plaintiff had prevailed on the contract for purposes of that statute. (*Ibid.*)

In *de la Cuesta v. Benham*, *supra*, 193 Cal.App.4th 1287, a landlord sued a commercial tenant for unpaid rent, and was awarded 70 percent of what he claimed was owing after the tenant vacated the premises. (*Id.* at pp. 1290-1291.) The trial court found there was no prevailing party on the theory that the result was both good news and bad news for the landlord, but the Court of Appeal reversed. (*Id.* at p. 1300.) The appellate court agreed that the result "[fell] short of a 'complete victory' " since a fifth of the unpaid rent was deducted and certain other charges were reduced, and thus the trial court possessed discretion to declare no party had prevailed, but it concluded the court abused its discretion in that respect, explaining, "If the results in a case are lopsided in terms of one party obtaining 'greater relief' than the other in comparative terms, it may be an abuse of discretion for the trial court *not* to recognize that the party obtaining the 'greater' relief was indeed the prevailing party." (*Id.* at p. 1295.) The *Benham* court concluded that because the landlord had "obtained the 'greater part' of its two litigation objectives:

12

repossession and compensation for the tenant's occupation," the court abused its discretion in concluding no party prevailed.  (*Id*. at p. 1299.)

3.  *Russo Did Not Achieve a Simple Unqualified Win on His Contract Claim, Giving the Court Discretion on the Prevailing Party Determination*

Here, the trial court ruled no party prevailed for purposes of attorney fees under Civil Code section 1717.  We conclude the ruling was not a clear abuse of discretion, regardless of the court's underlying reasoning.  (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443; [" 'We uphold judgments if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion" ' "]; *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 ["[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason"].)  Even if we assume Russo's sole claim "on the contract" was the breach of contract cause of action as he argues, Russo plainly did not recover *all the relief requested* on his contract claim: the discounted $75,000 in damages stemming from Bank's breach.  Rather, like the plaintiffs in *Nasser v. Superior Court*, *supra*, 156 Cal.App.3d 52 and *Scott*, *supra*, 20 Cal.4th 1103, he achieved only partial success in that he was awarded only a portion of his total request: the foreclosure fees of $523.14.  Indeed, Russo admits that he prevailed only on one of his two damage theories presented to the jury on his contract claims, and substantially less than his total requested relief.

We cannot agree with Russo's argument that the court abused its discretion in its ruling because he achieved his litigation goal of eliminating the impound account.  That may have been one of Russo's litigation goals, but it was not the only one, as he sought to

recover tens of thousands of dollars in damages stemming from his claimed inability to refinance his property. Considering all of the equitable considerations as we must (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 877), we readily conclude this is not a lopsided result in Russo's favor. In short, the trial court possessed discretion to conclude that neither party prevailed for purposes of Civil Code section 1717 attorney fees (a ruling that Bank does not challenge in its cross-appeal), and, in view of Russo's nominal recovery, it did not manifestly abuse its discretion in so ruling.

B. *Prevailing Party for Purposes of Code of Civil Procedure Section 1021.5*

Russo contends he was entitled to attorney fees as the prevailing party on his UCL claim as a private attorney general under Code of Civil Procedure section 1021.5. He argues he need only establish he was a "successful party" and was not required to obtain all of his requested relief in that respect. According to Russo, because he was awarded $523.14 in damages and determined to be the prevailing party on his UCL claim, he was a successful party for purposes of an award of private attorney general fees. Because the trial court's order did not mention his request under Code of Civil Procedure section 1021.5, Russo asks that we reverse the order denying fees and order the court to make the requisite findings of fact for such an award.

Pointing out Russo neither requested findings or a statement of decision on his fee motion nor sought to augment the record, Bank responds first that we should affirm the court's implicit ruling denying those fees based on Russo's failure to provide an adequate record to assess error. Alternatively, on the merits, Bank argues substantial evidence supports the court's implied finding that Russo did not satisfy the criteria for a private

14

attorney general fee award, in part because Russo was not a successful party on his UCL claim, and he did not confer a significant benefit on the public.

1. *Legal Principles and Standard of Review*

Code of Civil Procedure section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

This section "codifies the private attorney general doctrine the Supreme Court adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25" and "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 520; see also *Vasquez v. State* (2008) 45 Cal.4th 243, 250.) "Entitlement to fees under [it] requires a showing that the litigation (1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) was necessary and imposed a financial burden on plaintiffs which was out of proportion

15

to their individual stake in the matter. [Citation.] The section acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring." (*Coalition*, 238 Cal.App.4th at pp. 520-521.)

Private attorney general fees are available only to a "successful" party. (*Vasquez v. State*, *supra*, 45 Cal.4th at pp. 250-251; *Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725, 734; *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa*, *supra*, 238 Cal.App.4th at p. 521; *Urbanick v. Newton* (1993) 19 Cal.App.4th 1837, 1842.) " 'In determining whether a plaintiff is a successful party for purposes of [Code of Civil Procedure] section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." [Citation.] [¶] The trial court in its discretion "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify [a private attorney general] attorney fee award" . . . .' " (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 566.) " 'The term "successful party," as ordinarily understood, means the party to litigation that achieves its objectives.' [Citation.] ' "A lawsuit's ultimate purpose is to achieve actual relief from an opponent. . . . On this common understanding, if a party reaches the 'sought-after destination,' then the party 'prevails' regardless of the 'route taken.' " ' " (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 621, quoting *Graham v. DaimlerChrysler Corp.*, at p. 571.) "The trial court must find a 'causal connection between the plaintiffs' lawsuit and the relief obtained in order to justify a [private attorney general] fee award . . . to a successful party.' " (*Leiserson v. City of San Diego*, *supra*, 202 Cal.App.3d at p. 735.) " 'Courts

16

take a "*broad, pragmatic view of what constitutes a 'successful party'* " in order to effectuate the policy underlying [Code of Civil Procedure] section 1021.5.' " (*McGuigan v. City of San Diego* (2010) 183 Cal.App.4th 610, 623.)

"In ruling upon a [Code of Civil Procedure] section 1021.5 fees request, the trial court will exercise ' " 'its traditional equitable discretion.' " ' " (*McGuigan v. City of San Diego*, *supra*, 183 Cal.App.4th at p. 623.)  Thus, "the abuse of discretion standard applies in reviewing a trial court's decision whether to award a plaintiff [private attorney general] attorney fees.  [Citations.]  Even assuming the underlying facts are undisputed, it remains the trial court's duty to consider those facts and the circumstances of the case and exercise its discretion in determining whether the requirements were satisfied for [such] an award of attorney fees . . . , and we can reverse the court's determination only if there is no reasonable basis for it." (*Carian v. Department of Fish and Wildlife* (2015) 235 Cal.App.4th 806, 816; see also *Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 334 [court's judgment on request for private attorney general fees must not be disturbed on appeal unless the appellate court determines it is "clearly wrong"].)

2.  *Claim of Inadequate Record*

We reject Bank's claim that the record is inadequate to assess error.  First, because the terms "prevailing party" and "successful party" are synonymous (*Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at p. 570; *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa*, *supra*, 238 Cal.App.4th at p. 521) the trial court may reasonably have concluded its determination that neither party prevailed was sufficient to

17

deny Russo fees under Code of Civil Procedure section 1021.5.[3]  Second, Code of Civil

Procedure section 1021.5 does not require the initial determination on fees to be made by

the trial court.  (*Laurel Heights Improvement Assn. v. Regents of University of California*

(1988) 47 Cal.3d 376, 426.)  In any event, "[w]here, as here, the court was not asked to

and did not make findings on substantial factual issues, we must infer all findings

necessary to support the judgment and proceed to examine the record to determine if they

are based on substantial evidence."  (*Beach Colony II v. California Coastal Com.* (1985)

166 Cal.App.3d 106, 110; *Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1367-1368.)

However, Russo's failure to request specific findings on any particular criterion waives

any objection to the lack of a finding.  (See *County of San Luis Obispo v. Abalone*

*Alliance* (1986) 178 Cal.App.3d 848, 868.)

 3. *Successful Party Determination*

 We conclude, viewing Russo's action broadly and realistically (*Graham v.*

*DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at p. 565; *Woodland Hills Residents Assn., Inc.*

*v. City Council* (1979) 23 Cal.3d 917, 938), that the trial court did not abuse its discretion

in its ruling because Russo cannot be deemed a successful party under Code of Civil

---

3 That the court declared Russo the prevailing party for purposes of Code of Civil
Procedure section 1032, subdivision (a)(4) as "the party with a net monetary recovery" is
of no consequence.  This definition pertains only to the recovery of costs.  It is not
applicable in determining who is the prevailing party under an attorney fee statute that
does not define the term "prevailing party," such as the private attorney general statute.
(See *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146,
1153; *Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1128-1129;
*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1572; fn. 2,
*ante*.)

Procedure section 1021.5 as a matter of law. Our conclusion is compelled by our decision in *Leiserson v. City of San Diego*, *supra*, 202 Cal.App.3d 725.

In *Leiserson*, a news cameraman was arrested after he photographed an airliner crash site under investigation. Though he lost his civil rights claim in part because the trial court ruled police could reasonably believe the crash was the result of a possible crime (*Leiserson*, *supra*, 202 Cal.App.3d at pp. 730-731), on Leiserson's appeal, this court held that some of the trial court's justifications for the police conduct were insufficient. (*Id*. at p. 730.) After our opinion became final, Leiserson moved for attorney fees as a private attorney general under Code of Civil Procedure section 1021.5, contending his action had resulted in enforcing an important right affecting the public interest and conferring significant benefits on the general public and news media in that it served to vindicate the media's right to gather and disseminate information about disaster sites, acted as a catalyst for policy reforms by the police department, and resulted in a published decision delineating previously undefined rights of the news media. (*Id*. at p. 731.)

A panel of this court held as a matter of law that Leiserson was not a "successful" litigant within the meaning of the private attorney general statute. (*Leiserson v. City of San Diego*, *supra*, 202 Cal.App.3d at pp. 733, 736.) This court acknowledged that the appellate opinion defined certain media rights to an extent, but it did not warrant private attorney general fees "considering the precise nature of the tort litigation Leiserson elected to pursue and his failure to prevail in any manner within his chosen context." (*Id*. at p. 738.) We explained: "Although the procedural device by which a plaintiff seeks to

19

enforce an important right does not always determine entitlement to attorney's fees under [Code of Civil Procedure] section 1021.5 [citations], the relief sought is probative of such entitlement. Indeed, where only a litigant's personal economic interests are advanced by a lawsuit, fees may not be awarded since the litigation does not significantly benefit a large class of persons." (*Ibid.*) This court pointed out that Leiserson "confined his tort action prayer to civil damages for himself, never requesting a declaration of the access rights of the press at disaster sites . . . . By tactical design, the litigation was not intended to promote the rights of the media by obtaining a judicial declaration of those rights. Rather, a review of Leiserson's damages complaint reveals his primary intent for pursuing the litigation was to advance his own personal economic interest. In spite of Leiserson's posttrial declarations, the record conclusively shows he vigorously asserted entitlement to substantial compensatory damages for physical and emotional trauma from both the City and individual defendants at trial. Further his trial brief . . . strongly argues for substantial punitive damages against the individuals." (*Ibid.*) This court stated that given the "narrow focus of Leiserson's tort pleadings," the ensuing published opinion was "simply fortuitous." (*Ibid.*) We held it would be absurd for private attorney general fees to be predicated on that decision, which used his appeal as a tool to communicate legal guidelines with the bench and bar, where Leiserson himself had not requested such a declaration. (*Ibid.*)

*Leiserson* compels the same result in Russo's case. As in *Leiserson*, Russo's complaint prayed for relief inuring to himself and his personal economic interests: an accounting of Russo's payments made to Bank; damages including punitive and

emotional distress damages; a "declaration of the parties' obligations under the Note and [Deed of Trust] and other loan obligations, and for reformation of the current loan obligations back to the terms and amounts originally put in place by the parties agreement in 2003 and a rescission of the escrow"; refunds of all amounts wrongfully paid by Russo to Bank; an order directing Bank to "fix and repair the adverse credit consequences created and caused by [its] representation, conduct and/or omissions"; and attorney fees and costs. The record shows Russo sought substantial compensatory damages and emotional distress damages for himself and did not seek to vindicate the rights of other borrowers. He did not ask for a judicial declaration of the rights of other Bank borrowers.[4] (Accord, *Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1569-1571.) Additionally, as in *Leiserson*, given Russo's sought-after damages and his actual nominal recovery, he had not achieved his primary goal of the litigation, which was a large damage award, not a vindication of a wide class of Bank customer rights. (*Leiserson*, *supra*, 202 Cal.App.3d at pp. 738.) Even if the litigation

---

[4]    In his declaratory relief cause of action, Russo alleged:  "An actual controversy has arisen between the parties in that Plaintiffs [*sic*] contend that Defendants [*sic*] have, among other things, failed to properly account for monies paid, wrongfully created an escrow account, wrongfully commenced non-judicial foreclosure and then wrongfully made Plaintiff pay certain amounts to stop the foreclosure and wrongfully demanded that Plaintiff pay a monthly amount that was not contracted for and other actions and omissions . . . ."  Russo alleged he "desires a judicial determination of his rights and duties under the Note and [deed of trust] and a declaration that he is entitled to a proper accounting and application of payments, a reversal of the loan escrow and increased payments, a refund for improper payments he was forced to make, and continues to be force [*sic*] to make, a return to performance (and the monthly amounts) under the terms of the Note and [deed of trust], attorney's fees and costs and other relief set forth herein and/or subject to proof."

achieved some benefit to those customers, it was merely *incidental*, which is not sufficient for a private attorney general fee. (E.g., *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1415 ["there should be no award under" the private attorney general statute "unless public benefits are very significant"], overruled on other grounds in *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1151.

Russo maintains he pursued an important statutory right relating to the lender's obligation to meet statutory criteria in imposing an impound account under Civil Code section 2954. But this is not enough without a *significant* benefit achieved to a large number of persons. In *Woodland Hills Residents Assn., Inc. v. City Council*, *supra*, 23 Cal.3d 917 the California Supreme Court explained: "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under [Code of Civil Procedure] section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Id*. at pp. 939-940.)

Russo also maintains, citing *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, that he did not need to seek a judicial ruling binding the numerous

22

borrowers impacted by Bank's impound policy in order to be deemed to have pursued a claim that could have benefitted a large number of people. The assertion is not supported by *Robinson*. In *Robinson*, the plaintiff police chief successfully prosecuted rights under the Public Safety Officers Procedural Bill of Rights Act (the POBRA) that conferred a significant benefit on the general public in that he challenged his removal as chief, leading to a published decision holding that the city's removal of its police chief from office without notice, a statement of reasons, or an opportunity for an administrative appeal violated the POBRA. (*Robinson v. City of Chowchilla*, at pp. 387, 395-399.) The police chief obtained a peremptory writ of mandate that required the city to comply with the POBRA obligations, and he also obtained a judgment awarding him damages for breach of contract. (*Id*. at p. 393.) In deciding whether the trial court properly denied the plaintiff private attorney general fees, *Robinson* (and the cases it summarized on the page cited by Russo) recognized "the importance of the rights and protections set forth in POBRA" which were "matters of statewide concern," which compelled its conclusion that officer's action enforced an important right affecting the public interest. (*Id*. at p. 395.) The court also found the published decision benefitted a large class of persons— police chiefs—as well as the state's citizenry. (*Id*. at p. 399.) Russo's action is entirely unlike *Robinson* in that he has not shown the matters at issue, a lending institution's policy relating to impound accounts, is a longstanding matter of statewide concern as are POBRA rights and protections. *Robinson* does not compel us to reach a different conclusion.

In sum, we uphold the court's implied finding that Russo was not the successful party for purposes of Code of Civil Procedure section 1021.5; Russo has not shown his efforts contributed significantly to the conferral of an actual benefit to the public or a large class of persons, as they must, to recover private attorney general fees. (*Vasquez v. State*, *supra*, 45 Cal.4th at pp. 250-251.) Because the court found one of the statutory criteria (success) was *not* met, it was not required to make findings concerning the remaining criteria. (*Satrap v. Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 80-81.) The trial court did not abuse its discretion in denying Russo private attorney general fees.

C. *Denial of Leave to Amend to Allege a Cause of Action for Intentional Infliction of Emotional Distress*

1. *Background*

Before trial, Bank moved in limine to preclude Russo from referencing or admitting evidence of emotional distress or pain and suffering. It acknowledged Russo had sought emotional distress damages throughout the litigation, but argued he was not entitled to such damages because (1) the "economic loss rule" precluded recovery of tort-based damages for purely economic losses, particularly when the parties' relationship was contractually based such as Russo's involving the note and trust deed; (2) such damages were not recoverable on claims arising from mortgage loan servicing and nonjudicial foreclosure activity; and (3) in general such damages could not be recovered by plaintiffs for the stress of prosecuting their own lawsuits. Bank also argued Russo could not plead a claim for intentional infliction of emotional distress because he could not prove Bank's

24

conduct was so outrageous as to be actionable, and such claims were generally not allowed in the lender/borrower context.

Russo opposed the motion and in his papers sought leave to amend his complaint to add a claim for intentional infliction of emotional distress. He argued Bank's motion was in effect an untimely motion for summary judgment; that emotional distress damages were permitted in cases involving intentional torts as in his case, where Bank's misrepresentations and unlawful conduct caused him emotional distress; and the evidence showed Bank's conduct was not routine, but part of an illegal policy of unilaterally imposing escrow accounts on borrowers. Russo argued emotional distress damages were permitted in both financial elder abuse and fraud actions, and the evidence showed he had suffered severe emotional distress. Russo asserted that because the facts would remain essentially the same, Bank would not be prejudiced by the amendment.

The court denied the request as untimely and requiring a noticed motion. It ruled Russo would have an opportunity to renew the motion as one seeking leave to amend according to proof. Following the presentation of evidence, Russo renewed his motion as a motion for leave to amend to conform to proof. The trial court again denied the motion, ruling it was untimely and also unsupported by the evidence.

2. *Legal Principles and Standard of Review*

"Code of Civil Procedure section 473 gives trial courts discretion to allow a party to amend his or her pleadings 'in furtherance of justice,' while [Code of Civil Procedure] section 576 states that such leave to amend may be granted even after the commencement of trial. [Code of Civil Procedure s]ection 469 specifically governs motions to amend at

25

trial to conform to proof . . . .  [A]mendments at trial to conform to proof, 'if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation.' "  (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909, fn. omitted.)

"[T]he allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears that such discretion has been abused.  [Citations.]  Such amendments have been allowed with great liberality 'and no abuse of discretion is shown unless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced.' "  (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31, italics omitted.)  If the proposed amendment fails to state a cause of action, however, it is proper to deny leave to amend.  (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)  Unwarranted delay in seeking leave to amend may be considered by the court when ruling on a motion for leave to amend, and appellate courts are less likely to find an abuse of discretion where the proposed amendment is offered after long unexplained delay or where there is a lack of diligence.  (*Ibid*.)

Here, Russo does not challenge the trial court's procedural ruling at the outset of trial.[5]  Rather, he contends the court abused its discretion by denying his request to amend his complaint to conform to proof so as to add a claim of intentional infliction of

---

5      Nor can he successfully.  To obtain leave of court to add a new cause of action, a noticed motion is generally required.  (Code Civ. Proc., § 473, subd. (a)(1) ["The court may . . . in its discretion, *after notice to the adverse party*, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars," italics added].)

26

emotional distress. He argues Bank would not have suffered prejudice from such an amendment because it was aware he was pursuing such damages, which were the subject of Bank's pretrial motion to exclude such damages and Russo's trial brief, and the claim required litigation of facts Bank knew were in dispute before the start of trial. Russo also argues, without further explanation, that he "presented sufficient evidence to prove he suffered emotional distress."

To maintain a claim for intentional infliction of emotional distress, however, it is not enough for the plaintiff to merely demonstrate he or she suffered emotional distress. Such distress must be *severe* or *extreme*. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.) At least as recounted in Russo's brief, we cannot say Russo's evidence rose to that level.[6] Nevertheless, under these circumstances, we need not decide whether the trial court abused its discretion in denying Russo's request for leave to amend during trial. Even if we were to conclude the court should have allowed him to present a cause of action for intentional infliction of emotional distress, we cannot presume its error was prejudicial to

---

[6] In his opening brief, Russo summarizes the evidence of his "extreme emotional distress because of the Bank's illegal conduct" (some capitalization omitted) as follows: "Tony Russo's [*sic*] was the plaintiff's son. His father moved from Italy to the United States. He took pride in owning a home. [Citation.] Russo was a proud person. [Citation.] Tony found out his father's home was in foreclosure. Russo was very emotional. He cried. He kept saying, '[T]hey're taking my house away, they're taking my house away.' [Citation.] Tony asked his father what was going on. [Citation.] Russo typically was very responsible, took care of his business, and paid his bills. [Citation.] Tony tried to calm his father down, but Russo was in bad shape. Russo could not stop crying. He got rashes on his arms and face." " 'Severe emotional distress means " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' " (*Hughes v. Pair*, *supra*, 46 Cal.4th at p. 1051.)

Russo. The determination of prejudice must be based on the specific circumstances of the case. "The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice." (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82.) Though Russo argues any such error "requires reversal of the judgment without any additional inquiry regarding prejudice because the jury did not have the opportunity to resolve Russo's claim," he cites no authority for the proposition. We hold to the contrary that such error is not exempt from the constitutional test of reversible error, that is, prejudice amounting to a miscarriage of justice. (Cal. Const., art. VI, § 13; accord, *Rainer v. Community Memorial Hosp.* (1971) 18 Cal.App.3d 240, 253-257.)

Here, Russo has made no attempt to demonstrate prejudice. We therefore cannot conclude the court's decision to deny his request to amend his pleading to conform to the proof adduced at trial was actually unjust, that is, that the jury would have reached a different result or given a different award had Russo been permitted to assert such a claim.

## II. *Bank's Appeal*

Bank contends the trial court abused its discretion in ruling Bank's two offers to compromise with Russo—the first for $100,000, then for $250,000 plus up to $115,000 in attorney fees—were not made in good faith, and thus denying Bank's posttrial motion for fees and costs it sought under Code of Civil Procedure section 998. Bank maintains the court applied the wrong criteria in judging the measure of good faith; rather than look to Russo's subjective willingness to accept the offers, it should have assessed the

28

objective reasonableness of the offer in light of what Bank knew or should have known about the size and likelihood of a favorable judgment.  According to Bank, because its offers greatly exceeded Russo's actual recovery as well as his objectively reasonable expectations of recovery at the time the offers were made, they were "undeniably" in good faith.  Bank also argues the court "failed to assess the reasonableness of [Bank's] 998 offers in monetary terms."

Russo responds that the 998 offers were defective as a matter of law because, having made no offer to cancel Russo's impound account and repair his credit, they did not resolve all of his lawsuit's claims and did not further the purpose of putting an end to the litigation.  He maintains as a result, it is irrelevant whether the court applied a subjective or objective standard.  Russo further argues that Bank forfeited its arguments as to the subjective/objective distinction because it did not raise the point below.  Russo maintains Bank has not shown the court abused its discretion in deciding the 998 offers had no realistic prospect of success.

A. *Legal Principles and Standard of Review*

Code of Civil Procedure section 998 "modifies the general rule of [Code of Civil Procedure] section 1032 that only the prevailing party recovers its costs."  (*Scott*, *supra*, 20 Cal.4th at p. 1112.)  The statute "is designed to encourage the settlement of lawsuits before trial.  [Citation.]  Pursuant to [Code of Civil Procedure] section 998, '[n]ot less than 10 days prior to commencement of trial or arbitration,' a party in a case 'may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time.'

29

[Citation.] . . . 'If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant.' " (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 528-529.)

" 'Costs awardable under this subdivision include "costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." ' " (*Melendrez v. Ameron International Corporation* (2015) 240 Cal.App.4th 632, 645, quoting *Najah v. Scottsdale Ins. Co.* (2014) 230 Cal.App.4th 125, 143.)

Courts of Appeal, including this one (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 152; *Litt v. Eisenhower Medical Center* (2015) 237 Cal.App.4th 1217, 1221), have long read a good faith or reasonableness requirement into Code of Civil Procedure section 998. (See also *Melendrez v. Ameron International Corporation*, *supra*, 240 Cal.App.4th at p. 647; *Najah v. Scottsdale Insurance Company*, *supra*, 230 Cal.App.4th at pp. 143-144; *Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1528; *Arno v. Helinet Corp.* (2005) 130 Cal.App.4th 1019, 1024; *Elrod v. Oregon Cummins*

30

*Diesel, Inc.* (1987) 195 Cal.App.3d 692, 696; *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821, 822.)[7] The California Supreme Court, however, has not squarely decided the question. (See *Regency Outdoor Advertising, Inc. v. City of Los Angeles*, *supra*, 39 Cal.4th at p. 531 [assuming without deciding that Code of Civil Procedure section 998 entailed a good faith requirement].) The good faith test requires that " ' " 'the settlement offer be "realistically reasonable under the circumstances of the particular case" ' " and that there be " ' "some reasonable prospect of acceptance. [Citation.]" ' " [Citation.] " '[A] party having no expectation that his offer will be accepted "will not be allowed to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees." ' " ' " (*Melendrez*, at p. 647.) " ' " 'The reasonableness of a defendant's . . . 998 settlement offer is evaluated in light of "what the offeree knows or does not know at the time the offer is made . . . ." ' " [Citation.] "Where the defendant obtains a judgment more favorable than its offer, ' "the judgment constitutes prima facie evidence showing the offer was reasonable . . . ." ' " ' " (*Ibid*.)

"   ' " 'Whether a . . . 998 offer was reasonable and made in good faith is left to "the sound discretion of the trial court." ' [Citation.] " 'In reviewing an award of costs and fees under Code of Civil Procedure section 998, the appellate court will examine the circumstances of the case to determine if the trial court abused its discretion in evaluating

---

7       In *Elrod v. Oregon Cummins Diesel, Inc.*, *supra*, 195 Cal.App.3d 692, the court pointed out that after one court had interpreted Code of Civil Procedure section 998 to include a good faith requirement, the Legislature amended and reenacted the statute without changing the statutory language interpreted by that court. (*Id*. at p. 111.) It concluded that the Legislature was deemed to have approved insertion of a good faith element in the statute. (*Ibid*.)

the reasonableness of the offer or its refusal.' [Citation.] ' " [']The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " ' " ' " (*Melendrez v. Ameron International Corporation*, *supra*, 240 Cal.App.4th at p. 647.) "An appellate court reviewing a . . . 998 offer may not substitute its opinion for that of the trial court unless there has been a clear abuse of discretion, resulting in a miscarriage of justice." (*Arno v. Helinet Corp.*, *supra*, 130 Cal.App.4th at p. 1025.)

B. *Analysis*

Because Bank's 998 offers greatly exceeded the judgment, the law deems them prima facie reasonable, and it was Russo's burden in the trial court to demonstrate that in fact, under "the circumstances of the particular case" (*Melendrez v. Ameron International Corporation*, *supra*, 240 Cal.App.4th at p. 647), the offers were realistically unreasonable at the time they were made. (*Ibid.*; *Elrod v. Oregon Cummins Diesel, Inc.*, *supra*, 195 Cal.App.3d at p. 700.) Because the trial court sided with Russo, deciding Bank's 998 offers were not reasonable or good faith offers, it is Bank's burden on appeal to show the court exercised its discretion in an arbitrary, capricious or patently absurd manner. (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1482.) As we explain, we cannot say Bank has demonstrated such a manifest abuse of discretion under the particular circumstances of this case.

In addressing the issue of Bank's reasonableness and good faith in its settlement offers, the court discussed the parties' litigation positions extensively, pointing out that

32

"[t]he only objective, the only consideration that the plaintiff had from the beginning was, 'I don't want the escrow account.' And the bank took the position, 'You're getting the escrow account whether you like it or not.' " The court continued: "[E]ven when the parties were engaged in this absurd game of chicken that was prompted by the plaintiff, the bank still wouldn't release the escrow account. Even when the plaintiff filed the lawsuit, . . . the bank wouldn't release the escrow account. And it was obvious that the Bank was not going to release the escrow account. [¶] And what is, I mean, the most ridiculous, absurd situation was the bank offered $100,000 and the plaintiff said, 'I'm not going away. I don't want the escrow account.' The bank then offered $250,000. And the plaintiff said, 'No. I want you to release the escrow account.' And the bank never offered to do that. Even after the trial, the bank wouldn't do it." When Bank's counsel pointed out it had extended an informal offer to release the escrow account and pay Russo $20,000, the court responded: "I understand. And . . . 998 offers are looked at critically and there was no way that Mr. [Russo] was going to accept any 998 offer so long as the escrow account was still in force." Counsel disagreed with the court, telling it he did not believe that was true. The court responded, "Well, it is true."

Bank's counsel argued, citing a treatise, that a 998 offer was required to be capable of valuation, and that to include a term of settlement to remove the impound account would be contrary to that principle, and would encourage defendants to add conditions that would introduce uncertainty. The court expressed its belief that even if Bank had offered $100,000 with cancellation of the impound account as a term of the 998 offer, Russo would not have accepted it given his claims: "[Russo] claimed that the bank gave

33

him a stroke and [he] wanted $1 million."  Ultimately, the court confirmed its tentative ruling that the section 998 offers were unreasonable and not made in good faith, conceding Bank's counsel had made a good point but explaining that the court had "given this a lot of thought."

We are unpersuaded by Bank's argument that the trial court applied incorrect standards in ruling on the motion.  As a preliminary matter, we reject Bank's assertion that the court failed to assess the reasonableness of Bank's section 998 offers in monetary terms.  The court expressly acknowledged that the amount of Bank's offers—in view of Russo's claims he had suffered a stroke as a result of his dealings with Bank and sought $1 million in damages—would have been unacceptable to Russo.  Bank does not explain what an assessment of reasonableness "in monetary terms" would otherwise entail.

As for Bank's assertion that the court erred by using a subjective standard, we do not read Bank's cited authorities as making an objective/subjective distinction, or as squarely holding an objective standard must be used in assessing the reasonableness of a settlement offer.  Rather, in the cited decisions, the appellate courts set out a standard by which the trial court assesses the facts of each *particular* case and *stands in the shoes of the defendant and plaintiff*, not hypothetical reasonable litigants.[8]  As the trial court

---

[8]     Bank uses an "e.g." cite to refer to several cases, but none set forth an objective standard.  In *Regency Outdoor Advertising, Inc. v. City of Los Angeles*, *supra*, 39 Cal.4th at page 531, the California Supreme Court merely acknowledges the decisions including the good faith standard, as meaning the offer " 'must be realistically reasonable under the circumstances of the particular case . . . .' "  In *Melendrez v. Ameron International Corporation*, *supra*, 240 Cal.App.4th at page 647, the court, citing *Najah v. Scottsdale Ins. Co.*, *supra*, 230 Cal.App.4th at pages 143-144, states that the reasonableness of a 998

34

expressly acknowledged, Bank's offers were made during a time when Russo was claiming he had suffered a stroke due to its misconduct and the stress of the situation involving his home. Bank gives us no reason to dispute the court's recounting of Russo's litigation position, and his insistence that the impound account be cancelled as a condition of settlement. Unless a clear case of abuse of discretion is shown and there has been a miscarriage of justice, we will not substitute our opinion for the trial court's and thereby divest the trial court of its discretionary power. (*Melendrez v. Ameron International Corporation*, *supra*, 240 Cal.App.4th at p. 647; *Clark v. Optical Coating Laboratory, Inc.*, *supra*, 165 Cal.App.4th at pp. 185-186.) No such manifest abuse of discretion has been shown here.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

---

offer " ' " 'is evaluated in light of "what the offeree knows or does not know at the time the offer is made . . . ." ' " ' " (See also *Adams v. Ford Motor Co.*, *supra*, 199 Cal.App.4th at p. 1485 [reasonableness of a defendant's 998 settlement offer is evaluated "in light of 'what the offeree knows or does not know at the time the offer is made,' along with what the offeror knew or should have known about facts bearing on the offer's reasonableness"]; *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 185-186 [good faith requires that the offer of settlement be " ' "realistically reasonable under the circumstances of the particular case" ' "]; *Carver v. Chevron U.S.A., Inc.*, *supra*, 97 Cal.App.4th at p. 154 [good faith is to be assessed "in light of the circumstances at the time the offer was made, *as evaluated from the perspective of the defendants*," italics added].)

                                                                O'ROURKE, J.

I CONCUR:


HUFFMAN, Acting P. J.


I concur in part I of the opinion relating to the plaintiff's appeal.  As to the defendant's appeal in part II, I concur in the result.


McINTYRE, J.